UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SANJEEV SIRPAL,

                Plaintiff,                           Case No. 1:09-CV-22662-ALTONAGA/BROWN

vs.

UNIVERSITY OF MIAMI, a Florida not
for profit corporation, JAMES D.
POTTER, Ph.D., JOSE RENATO PINTO,
Ph.D., and CLAUDIA RODRIGUES,
Ph.D.,

                Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AS TO COUNTS XI AND
XII, PURSUANT TO RULE 12(d), FEDERAL RULES OF CIVIL PROCEDURE**

        Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Defendants, University of

Miami (the "University"), James D. Potter, Ph.D. ("Dr. Potter"), Jose Renato Pinto, Ph.D. ("Dr.

Pinto") and Claudia Rodrigues, Ph.D. ("Dr. Rodrigues") (collectively "Defendants"),[1] by and

through their undersigned counsel, hereby move to dismiss the Complaint filed by Plaintiff,

Sanjeev Sirpal, for failure to state a claim upon which relief can be granted.  In support of its

motion to dismiss as to Count II, breach of contract, the University has attached Exhibit A, the

University of Miami Miller School of Medicine 2007-2008 Medical Student Rights and

Responsibilities Handbook ("Medical Student Handbook"), and Exhibit B, Policies and

Procedures of the University of Miami Relating to Allegations of Misconduct in Research

_____

[1] The University of Miami, Dr. Potter, Dr. Pinto and Dr. Rodrigues were formally served with
the complaint on September 14, 2009.

("Research Misconduct Procedures").[2]  In support of its motion to dismiss or, in the alternative, for summary judgment as to Counts XI and XII, the University submits Exhibit C, University of Miami Patent & Copyright Policy Agreement, ("Policy Agreement") and Exhibit D, University Faculty Manual and requests that the Court consider these matters outside the pleadings, pursuant to Rule 12(d), Federal Rules of Civil Procedure.  As more fully set forth below, Plaintiff has not sufficiently pled a claim for violation of 42 U.S.C. § 2000d, breach of contract, violation of 42 U.S.C. § 1981, defamation, tortious interference, conversion or negligent bailment and the allegations of his complaint make clear that he cannot do so.  Accordingly, dismissal (or in the case of Counts XI and XII, summary judgment) is appropriate.

I.      **Plaintiff's Complaint**

In his complaint, Plaintiff alleges that he is an Asian-Indian and he was a Ph.D. graduate student in the University's Department of Molecular and Cellular Pharmacology and simultaneously a medical student at the University of Miami Miller School of Medicine ("Medical School").  (Compl. ¶ 4.)  As a Ph.D. graduate student, Plaintiff was engaged in protein/cardiomyopathy research in Dr. James Potter's laboratory.  Dr. Potter is the chairman of the Department of Molecular and Cellular Pharmacology.  Also researching in Dr. Potter's laboratory was Dr. Jose Pinto, a post-doctoral fellow.  Plaintiff alleges that Dr. Pinto requested to participate in Plaintiff's research and join in the authorship of a scientific article Plaintiff was working on for publication, and Plaintiff refused his request.  (*Id.* ¶¶ 11-13.)

---

[2] Plaintiff has quoted from and relied upon these two documents in his Complaint, *see* Compl. ¶¶12, 39-40 and, therefore, the University submits that Plaintiff has incorporated these two documents by reference into his Complaint and they may properly be relied upon by the University in its motion to dismiss.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

Plaintiff alleges that, following his rejection of Dr. Pinto's request to join in the publication, Dr. Pinto induced Dr. Rodrigues, a Research Assistant Professor, to bring allegations against Plaintiff that he had violated the Student Code of Conduct.  (*Id.* ¶ 16.) Between September 2007 and May 2008, the University investigated charges that Plaintiff had accessed Dr. Rodrigues' computer without authorization and that he had sent emails from her account to her grant administrator.  (*Id.* ¶¶ 16-21.)  Ultimately, the charges were found to lack sufficient evidence and Plaintiff was not found to have violated the Student Code of Conduct. (*Id.* ¶ 21.)

In the meantime, in February 2008, Plaintiff was accused of appropriating protein research samples from Dr. Pinto's laboratory freezer box.  (*Id.* ¶¶ 23-26.)  Several of Dr. Pinto's research samples were found in Plaintiff's freezer box with the labels rewritten in Plaintiff's handwriting.  (*Id.* ¶ 25.)  Based on these allegations, Dr. Potter dismissed Plaintiff from his laboratory and reported the dismissal and the accusations of the appropriated protein samples to the Molecular and Cellular Pharmacology Graduate Program Committee.  (*Id.* ¶¶ 27, 32.)  The Graduate Committee, after reviewing Dr. Potter's report and meeting with Plaintiff, recommended Plaintiff's dismissal from the Ph.D. program.  (*Id.* ¶ 43.)   Plaintiff appealed the dismissal to Dr. John L. Bixby, Associate Dean of the Medical School and Dr. Teresa Scandura, the Dean of the Graduate School, both of whom affirmed the Graduate Committee's recommendation of dismissal.  (*Id.*)

After Plaintiff's dismissal from the Ph.D. program, questions arose over the validity of Plaintiff's research in support of his article for publication.  Due to these concerns, Dr. Potter withdrew the manuscript from consideration and a research misconduct investigation was initiated to examine Plaintiff's research methods and conclusions.  (*Id.*)  Due to the ongoing research misconduct investigation, and Plaintiff's dismissal from the Ph.D. program, Plaintiff

was placed on a mandatory leave of absence from the Medical School, pending the resolution of the research misconduct investigation. (*Id.*)  Thereafter, Plaintiff brought this twelve count complaint against the University, Dr. Potter, Dr. Pinto and Dr. Rodrigues, alleging a violation of 42 U.S.C. § 2000d, breach of contract, violation of 42 U.S.C. § 1981, defamation, tortious interference, conversion and negligent bailment.

## II.     Standard for Ruling Upon a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted is proper when a claim is not adequately stated as to allege the proper elements of the cause of action; further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations made in a complaint should be "pleaded with sufficient clarity so as to 'give the defendant fair notice of what Plaintiff's claim is *and the grounds on which it rests*.'" *Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) (emphasis added by the court) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, courts "need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. Immigration & Naturalization Serv.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998); *see also Ellen v. Fla. Bd. Bar Examiners*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (finding that inconsistently alleged facts in a complaint constitute an exception to the general rules regarding motions to dismiss); *Smith v. Brevard County*, 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) (stating "the Court is permitted to take judicial notice of the allegations made in Plaintiff's earlier Complaint, and need not accept internally inconsistent factual allegations.").

### III.   Plaintiff Fails to State a Claim Upon Which Relief Can be Granted

#### A.   42 U.S.C. § 2000d

Count I purports to assert against the University a claim for racial discrimination in a federally funded program under 42 U.S.C. § 2000d.  Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." "Specifically, the statute requires that a person prove that he was denied participation, based on his race, in a federally funded program for which he was otherwise qualified."  *Humphrey v. United Parcel Service*, 200 Fed. App'x 950, 952 (11th Cir. 2006).  In support of this claim, Plaintiff alleges that the University's Department of Molecular and Cellular Pharmacology receives federal funds, specifically two National Institute of Health grants that financed Plaintiff's research, and that Plaintiff was denied participation in this program by virtue of his dismissal from the Ph.D. program.  (Compl. ¶¶ 50, 55.)  Plaintiff, however, has not alleged that he was denied participation in the Ph.D. program because of his race.  Plaintiff, instead, alleges that Dr. Potter and Dr. Pinto were treated differently from him, that the Formal Investigation Committee has delayed its issuance of a final report of its investigation, that Dr. Pinto and staff members of Dr. Potter's lab made racially derogatory remarks regarding Plaintiff and that Dr. Lemmon and Dr. Potter made statements to University of Florida officials to prevent Plaintiff's transfer to the University of Florida.  (Compl. ¶¶ 45-49.)  None of these allegations assert that Plaintiff was denied participation in a federally funded program *because* of his race and that failure renders the claim legally insufficient.  For these reasons, Count I fails to state a cause of action under 42 U.S. C. § 2000d and properly should be dismissed.

5

## B.   Breach of Contract

Count II purports to assert against the University a claim for breach of contract.  While Plaintiff's allegations are not entirely clear, the University interprets this claim to assert that Plaintiff is challenging three separate actions by the University: (1) Plaintiff's dismissal from the Ph.D. program; (2) Plaintiff's mandatory leave of absence from the Medical School; and (3) the Research Misconduct Investigation.  (*See* Compl. ¶ 43.)  Plaintiff, however, has failed to exhaust available administrative remedies as to his mandatory leave of absence from the Medical School and the Research Misconduct Investigation, a necessary prerequisite to challenging these actions in court.

Florida law on the exhaustion of administrative remedies is clear.  A challenge to a plaintiff's failure to exhaust administrative remedies goes to the very heart of the court's subject matter jurisdiction to hear a matter.  *Pushkin v. Lombard,* 279 So. 2d 79, 81 (Fla. 3d DCA 1973), *cert. denied,* 284 So. 2d 396 (Fla. 1973) (challenging action on "grounds of failure to exhaust administrative remedies . . . goes to the very subject matter jurisdiction of the court to hear a matter and may be attacked at any time").  Failure to exhaust available administrative remedies before initiating a judicial proceeding is fatal to a plaintiff's claim.  *See, e.g.*, *Gammi Phi Chapter of Sigma Chi Fraternity v. University of Miami,* 718 So. 2d 910 (Fla. 3d DCA 1998) (affirming trial court's denial of injunctive relief where there had not been an exhaustion of an available administrative remedy); *Montalvo v. University of Miami,* 705 So. 2d 1042 (Fla. 3d DCA 1998) (affirming summary judgment in favor of University where plaintiff failed to exhaust administrative remedies); *Atlantic Gas Corp. v. Rec Centers, Inc.,* 305 So. 2d 791 (Fla. 4th DCA 1975) (holding that trial court erred in denying motion to dismiss where plaintiff failed to exhaust administrative remedies); *Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc.,* 332 So. 2d 113 (Fla. 2d DCA 1976), *cert. dismissed,* 346 So. 2d 537 (Fla.

1977) (suit should be dismissed without prejudice where plaintiff failed to exhaust administrative remedies).

Pursuant to the Medical Student Handbook, a mandatory leave of absence can be imposed by the medical education administration for disciplinary reasons.  (Ex. A at 24.)  A medical student placed on a mandatory leave of absence "has the right to appeal a recommendation for a mandatory leave of absence to the Dean of the [Medical School]."  (*Id.*)  Plaintiff did not avail himself of his right to appeal, nor did he allege that he did so.  As such, Plaintiff now must await the final determination of his status at the Medical School, which is dependent on the ongoing Research Misconduct Investigation.  Until the Medical School makes a final determination as to Plaintiff's student status, and Plaintiff avails himself of his available administrative remedies as to that final determination, as set forth in the Medical Student Handbook, Plaintiff has no standing to challenge the non-final determination.  *See Gammi Phi,* 718 So. 2d at 911.

As to the Research Misconduct Investigation, the Research Misconduct Procedures outline a clear process for an investigation into allegations of research misconduct.  (Ex. B at 5-7.)  Once a formal investigation is completed, the Investigation Committee issues a final report to the Provost, "who shall be responsible for further action consistent with University policy." (*Id.* at 8.)  If a respondent is found guilty of misconduct, "[t]he Provost will determine what sanctions and/or corrective action will be taken in accordance with University policy. . . ." (*Id.* at 9.)  However, by Plaintiff's own admission, the Research Misconduct Investigation has not yet concluded.  (*See* Compl. ¶ 43(g).)  While a misconduct investigation, including submission of the final report, is supposed to be completed in 120 days, the Investigation Committee may be granted an extension where required.  (Ex. B at 7.)  Plaintiff has not made any allegations that the Committee did not seek and obtain an extension or that any extension was not required.  As

the investigation is ongoing, and there is an administrative process provided for under the Research Misconduct Procedures, Plaintiff has not exhausted his administrative remedies as they pertain to the Research Misconduct Investigation and his current challenge is premature.

Since Plaintiff has failed to avail himself of his administrative remedies and a final determination has not even been made as to Plaintiff's final status as a medical student or with respect to the Research Misconduct Investigation, the Court lacks subject matter jurisdiction to hear Plaintiff's breach of contract claim as to these non-final determinations.  *See Gammi Phi,* 718 So. 2d at 911.  While Plaintiff purports to allege a breach as it pertains to his dismissal from the Ph.D. program as well, Plaintiff has intertwined and combined all three alleged actions by the University in one count to an extent that makes it impossible to parse out the individual allegations from the claim.  Nor is it the duty of the University to do so.  For the foregoing reasons, the Court lacks subject matter jurisdiction as to Plaintiff's claim for breach of contract and Count II properly should be dismissed.

C.     **42 U.S.C. § 1981**

Count III purports to assert against the University, Dr. Potter, Dr. Pinto and Dr. Rodrigues a claim for violation of 42 U.S.C. § 1981.  Plaintiff generally alleges that he suffered racial discrimination at the hands of the Defendants and that such discrimination violated Plaintiff's contractual rights in violation of § 1981.  (Compl. ¶ 65.)  "To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. Bellsouth Comms.*, 372 F.3d 1250, 1270 (11th Cir. 2004); *see also Ali v. Stetson Univ., Inc.*, 340 F. Supp. 2d 1320, 1325 (M.D. Fla. 2004).  Plaintiff has alleged that he is a racial minority, specifically an Asian-American of Indian national origin.  (Compl. ¶ 4.)  Plaintiff,

8

however, sufficiently fails to allege the other two elements of a claim for racial discrimination under the statute.

First, Plaintiff's alleged basis for Defendants' intentional discrimination is that similarly situated individuals (Drs. Potter and Pinto) were treated differently from Plaintiff.  (Compl. ¶45.) "When comparing similarly situated individuals to raise an inference of discriminatory motivation, [however,] the individuals must be similarly situated in all relevant respects besides race." *Jackson*, 372 F.3d at 1273.  "'Different treatment of *dissimilarly* situated persons does not violate' civil rights laws." *Id.* (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)).  Plaintiff alleges that he is a "graduate student . . . who was working simultaneously on both his Ph.D. and M.D. degrees." (*Id.* ¶ 4.)  Plaintiff further alleges that Dr. Potter is "the chairman of the Department of Molecular & Cellular Pharmacology at [the Medical School]," (*Id.* ¶ 6) and that Dr. Pinto "is a post-doctoral fellow in [Dr. Potter's] Molecular & Cellular Pharmacology laboratory."  (*Id.* ¶ 7.)  Plaintiff's own allegations reveal that neither Dr. Potter nor Dr. Pinto is a similarly situated individual.  In fact, neither individual even is enrolled as a student at the University.  Accordingly, assuming for purposes of this motion that the University did treat Dr. Potter and Dr. Pinto differently from Plaintiff, such different treatment does not support a claim under § 1981 as these two individuals are not "similarly situated in all relevant respects" to Plaintiff as alleged by Plaintiff in his Complaint.  *Accord Jackson*, 372 F.3d at 1274 (dismissing § 1981 claim for failure to identify any specific non-minority similarly situated person).

Second, Plaintiff also has failed to state how the alleged discrimination concerned any of the rights enumerated in the statute, specifically the making and enforcing of contracts.  (*See* Compl. ¶64.)  Plaintiff merely alleges that Dr. Potter and Dr. Pinto were treated differently from him, that the Formal Investigation Committee delayed its issuance of a final report of its research

misconduct investigation, that Dr. Pinto and staff members of Dr. Potter's lab made racially derogatory remarks regarding Plaintiff and that Dr. Lemmon and Dr. Potter made statements to University of Florida officials to prevent his transfer to the University of Florida. (Compl. ¶¶ 45-49.)  None of these allegations, however, concern Plaintiff's contract with the University, nor has Plaintiff made any allegations as to how this alleged discriminatory conduct affected his contractual rights.  While Plaintiff was dismissed from the Ph.D. program and was placed on a mandatory leave of absence from the Medical School pending the outcome of the research misconduct investigation, Plaintiff has not alleged that any of the actions by the University were racially motivated or that these acts even constituted discrimination against Plaintiff.  Plaintiff has not alleged how any of his rights under § 1981 were violated as a result of race discrimination and, as such, this claim must fail.

Third, the claim against Dr. Rodrigues properly should be dismissed with prejudice.  "To establish a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'"  *Wallace v. DM Customs, Inc.*, No. 8:04-cv-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006) (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir.1991)).  Plaintiff has made no connection whatever between the alleged discriminatory conduct and any action on the part of Dr. Rodrigues.  Dr. Rodrigues had no involvement, pursuant to the allegations in Plaintiff's complaint, with Plaintiff's dismissal from the Ph.D. program, the research misconduct investigation, any alleged statements by the laboratory staff or Plaintiff's attempted transfer to another school.  Nor has Plaintiff made any allegations that Dr. Rodrigues discriminated against Plaintiff based on race.

Accordingly, as Plaintiff has sufficiently failed to allege two of the elements necessary to assert a claim under § 1981, dismissal of Count III against the University, Dr. Potter, Dr. Pinto

and Dr. Rodrigues is proper.  Count III also fails to state any basis for a claim under § 1981 as to Dr. Rodrigues nor could Plaintiff state any such basis and, as a result, Court III should be dismissed with prejudice as to Dr. Rodrigues.

### D.       Defamation (Counts IV, V, VII, VIII and IX)

"To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff."  *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999).  However, "a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable." *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004).

In *Jarzynka*, a law school student brought suit against St. Thomas University after he was expelled from the law school due to his threatening behavior towards other members of the law school community.  *Id.* at 1259.  After three of his fellow students reported his behavior to the Dean, the Dean consulted with the school's counselor.  *Id.*  The counselor reported to the Dean that she had previously met with the law student and that he posed a serious threat to the other students.  *See id.*  The law student brought a claim for defamation against the counselor for the statements she made "as part of an investigation into whether the [law student] presented a security threat to the School of Law community and/or its property."  *Id.* at 1267-68.  The court found that, as the counselor's statements were made in the course of the school's investigation, the statements were privileged as a matter of law.  *Id.* at 1268.

If a speaker's statements are privileged, a plaintiff must plead express malice to proceed with his claim.  *See id.*  Express malice is defined as "ill will, hostility and an evil intention to defame and injure."  *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2d DCA 1981).  "Malice cannot

be inferred from the fact that some statements are untrue." *Demby v. English*, 667 So. 2d 350, 353 (Fla. 1st DCA 1995). The privilege also is not forfeited if the speaker "in fact feels hostility or ill will toward the plaintiff." *Nodar v. Galbreath*, 462 So. 2d 803, 812 (Fla. 1984). Express malice requires a showing that "the speaker used his privileged position 'to gratify his malevolence'" towards the plaintiff. *Id.* at 811-12.

### 1.    Defamation against Dr. Rodrigues

Count IV purports to assert a claim for defamation against Dr. Rodrigues. The alleged defamatory statements are that Dr. Rodrigues reported to University officials that Plaintiff accessed her University computer without authorization and she "identified [Plaintiff] in an interview with a [University] investigator as a 'former student' with whom she had 'experienced . . . problems . . . .'"[3] (Compl. ¶¶ 16, 18.) As alleged by Plaintiff, these statements by Dr. Rodrigues were made to a University Investigator, concerning an investigation into whether the Plaintiff had violated the University Student Code of Conduct. (*See* Compl. ¶ 16.) Reviewing the facts in the light most favorable to Plaintiff, these statements are privileged. Dr. Rodrigues had an interest in communicating what she believed was a violation of the Student Code of Conduct, and the University investigators had a corresponding duty to investigate these allegations. Even if the allegations were later found to lack evidence to substantiate them, her interest in the subject matter creates a privilege. *See Jarzynka*, 310 F. Supp. 2d at 1267.

Further, Plaintiff has failed to allege express malice as required when the alleged defamatory statement is privileged. Plaintiff makes no assertion, other than the general allegation that the statements were made maliciously, that Rodrigues had any ill will or hostility towards him or that she used her position to gratify her malevolence towards him. Nor are any

---

[3] Plaintiff purports to specifically set forth one of the defamatory statements allegedly made by Dr. Rodrigues in paragraph 17 of the Complaint. Paragraph 17, however, quotes from an alleged email from Dr. Rodrigues to the American Heart Association that does not concern Plaintiff. Therefore, as the statement was not about Plaintiff, it cannot support his claim for defamation.

facts alleged that would support an improper motive on the part of Dr. Rodrigues. *Cf. Jarzynka*, 310 F. Supp. 2d at 1268 (dismissing defamation claims where assertions in complaint that counselor acted recklessly did not amount to actual malice). Accordingly, Plaintiff has not sufficiently pled a claim for defamation against Dr. Rodrigues and Count IV properly should be dismissed.

### 2.       Defamation against Dr. Pinto

Count V purports to bring a claim for defamation against Dr. Pinto. Plaintiff alleges that the defamatory statements made by Dr. Pinto are particularly alleged in paragraphs 23, 25 and 26 of the Complaint. (Compl. ¶ 72.) Paragraph 23 asserts that Dr. Pinto "spread false rumors about [Plaintiff] (e.g., that he was trying to 'sabotage' others' experiments)." "In order to properly plead a publication of a defamatory matter, it must be found that a statement was communicated to some third party in order to be actionable." *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So.2d 1025, 1027 (Fla. 3d DCA 1981). The pleading must "identify the particular person to whom the remarks were made with a reasonable degree of certainty." *Id.* (finding that allegations that defamatory statements were made to "numerous third parties on numerous occasions" did not meet the pleading requirements); *see also Jackson v. North Broward County Hosp. Dist.*, 766 So. 2d 256 (Fla. 4th DCA 2000) (finding complaint failed to specifically identify third persons to whom defamatory statements were made). Plaintiff fails to identify any individual to whom these alleged statements were made, as required by law. Thus, the allegation in paragraph 23 cannot support a claim for defamation.

The allegations contained in paragraphs 25 and 26 also cannot support a claim for defamation because they are privileged. In paragraph 25 and 26, Plaintiff asserts that Dr. Pinto advised Dr. Potter that Plaintiff had removed protein samples from Dr. Pinto's freezer box and placed them in his own freezer box, and that Plaintiff had instructed a laboratory fiber technician

to use Dr. Pinto's protein samples for an experiment. Assuming, for purposes of this motion, that such statements were made, Dr. Pinto had an interest and duty in the subject matter of these statements, as Dr. Pinto was reporting suspected misconduct by Plaintiff. Regardless of the veracity of Dr. Pinto's allegations, which, in any event, were ultimately found to be credible by both Dr. Potter and the Graduate Committee, Dr. Pinto's mutual interest in the subject matter creates a privilege. *See Jarzynka*, 310 F. Supp. 2d at 1267. Despite Plaintiff's allegations that Dr. Pinto was angry at Plaintiff, the privilege is not forfeited simply because the speaker "feels hostility or ill will toward the plaintiff." *Nodar*, 462 So. 2d at 812. As the statements allegedly made by Dr. Pinto, if made, would be privileged and Plaintiff has failed to allege that they were made with express malice, Plaintiff's claim for defamation against Dr. Pinto in Count V of the Complaint properly should be dismissed.

### 3.       Defamation against Dr. Potter and the University

Counts VII and VIII purport to assert claims for defamation against Dr. Potter and the University. Plaintiff alleges that the defamatory statements are: 1) Dr. Potter's March 12 memorandum to the Molecular and Cellular Pharmacology Graduate Program Committee, informing them that Plaintiff had been dismissed from Dr. Potter's laboratory due to allegations regarding missing protein samples from two other researchers that were found in Plaintiff's freezer box, and 2) Dr. Potter's statements to University officials during the inquiry into Plaintiff's complaint regarding his alleged lost data. (Compl. ¶¶ 32 – 33, 36.) Plaintiff alleges that Dr. Potter's statements were "made within the scope of his employment by [the University], to other employees of [the University]." (Compl. ¶¶ 83, 89.) Plaintiff further alleges that the University is vicariously liable for Dr. Potter's statements. (*See id.*)

Similar to Dr. Rodrigues' alleged statements, Dr. Potter's alleged statements, if made, would be privileged. *See Jarzynka*, 310 F. Supp. 2d at 1267. Dr. Potter, by Plaintiff's own

admission, allegedly made these statements to the Graduate Committee concerning an examination into allegations that Plaintiff had misappropriated research samples and to University officials during a preliminary inquiry into Plaintiff's complaint regarding his alleged lost data.  In both instances, Dr. Potter, the Graduate Committee and the University officials would have had an interest and a duty in the subject matter of these statements and both investigations.  Regardless of the veracity of these statements, because of the mutual interest in the subject matter, these statements are privileged.  *See id*.  Plaintiff also has failed to allege express malice or improper motive on the part of Dr. Potter that would defeat the privilege, a necessary allegation in the face of a privileged statement.  Therefore, Counts VII and VIII fail to state causes of action for defamation against either Dr. Potter or the University and both properly should be dismissed.

### 4.      Defamation against Dr. Potter and the University

Count IX purports to bring a third claim of defamation against Dr. Potter and the University.  Plaintiff alleges that Dr. Potter, both individually and on behalf of the University, made defamatory statements about Plaintiff to Dr. McCormack of the University of Florida. (Compl. ¶ 95.)  Plaintiff states that the defamatory statement is "particularly alleged in ¶ 50." (Compl. ¶ 96.)  However, paragraph 50 does not contain a statement by Dr. Potter.  Paragraph 50 alleges that "[t]he University of Miami, and particularly the Department of Molecular and Cellular Pharmacology, receives federal funds, including the two National Institute of Health ("NIH") grants that financed [Plaintiff's] protein/cardiomyopathy research."  (Compl. ¶ 50.)  As this allegation does not contain any statement by Dr. Potter, Plaintiff has failed sufficiently to state a claim for defamation against either Dr. Potter or the University and Count IX properly should be dismissed.

E.    **Tortious Interference**

1.    **Count VI against Dr. Pinto**

Count VI asserts a claim for tortious interference with a business relationship against Dr. Pinto for his alleged interference with Plaintiff's relationship with the Ph.D./M.D. program and Plaintiff's assignment to Dr. Potter's laboratory.  The elements of tortious interference with a business relationship are "(1) the existence of a business relationship under which the claimant has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damages to the claimant caused by the interference."  *Sloan v. Sax*, 505 So. 2d 526, 527-28 (Fla. 3d DCA 1987) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985)).  "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship."  *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999).  If the defendant is an agent or employee of the party with which the plaintiff has the relationship, there can be no interference.  *See, e.g.*, *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3d DCA 1981) (finding no tortious interference in relationship between doctor and hospital where defendants were all staff and administration of hospital); *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992) (finding claim was properly dismissed where employee of law firm alleged that an agent of the law firm interfered with his contract).

Dr. Pinto is not a student of the University but, rather, is a post-doctoral fellow in the Department of Molecular and Cellular Pharmacology.  (Compl. ¶ 7.)  As a post-doctoral fellow, Dr. Pinto is an employee of the University and, therefore, has an interest in Plaintiff's business relationship with the University.  As Dr. Pinto in an employee of the University  with an interest

16

in the business relationship between Plaintiff and the University, as a matter of law, there can be no interference and Plaintiff's claim must fail. *See Buckner*, 403 So. 2d at 1028 (affirming dismissal of claim where defendants were employees of hospital and, thus, parties to the business relationship). Therefore, Count VI fails to state a cause of action for tortious interference and properly should be dismissed.

### 2.    Count X against Dr. Potter and the University

Count X purports to bring a claim for tortious interference against Dr. Potter and the University, for Dr. Potter's alleged interference with Plaintiff's business relationship with the University of Florida.[4] Plaintiff alleges that, following his dismissal from the University's Ph.D. program, he "contacted several other universities' M.D./Ph.D programs, *fully disclosed the facts underlying his predicament* and sought to transfer into one of their programs." (Compl. ¶ 101 (emphasis added).) Several of the schools allegedly contacted Plaintiff, including the University of Florida, and "informed [him] that they would interview him and likely admit him as soon as they received his transcripts and a letter from the dean of students attesting to his status as a [University] medical student." (*Id.* ¶ 102.) Plaintiff alleges that after Dr. Sandra Lemmon and Dr. Potter spoke to the directors of the University of Florida's M.D./Ph.D. program, the University of Florida "withdrew its conditional offer of admission and fellowship." (*Id.* ¶¶ 105–06.)

In a claim for tortious interference, an enforceable contract is not required, but the relationship must be one where the plaintiff has legal rights. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473 (11th Cir. 1989). If the interference alleged is with a prospective business

---

[4] As Plaintiff has not alleged the existence of an actual, binding contract with the University of Florida, Defendants presume that Plaintiff's claim is for tortious inference with a business relationship, even though he has not specifically identified his claim as such.

relationship, the prospective relationship must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *ISS Cleaning Servs. Group, Inc. v. Cosby*, 745 So. 2d 460, 462 (Fla. 4th DCA 1999). Plaintiff has failed to allege such an agreement.

Plaintiff clearly states in his complaint that these universities informed him that he could apply to their institutions and that they would consider him for admission. However, nowhere does Plaintiff allege (nor can he allege) an actual agreement or offer of admission from any of these universities. "A mere offer to sell . . . does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen*, 647 So. 2d at 814. Similarly here, Plaintiff does not allege that he was given an actual offer of admission from the University of Florida. He merely alleges that he would be considered for admission, and such a statement does not establish the existence an identifiable agreement that would have been in all probability completed if not for the alleged interference. *See Cosby*, 745 So. 2d at 462. As such, Plaintiff fails to allege the existence of an identifiable business relationship and, thus, his claim for tortious interference must fail. Therefore, Count X properly should be dismissed.

### F. Conversion & Negligent Bailment

Count XI asserts a claim for conversion against the University, and Count XII asserts a claim for negligent bailment against the University and Dr. Potter. "Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing *Thomas v. Hertz Corp.*, 890 So. 2d 448, 449 (Fla. 3d DCA 2004). Implicit to a claim of conversion is that the plaintiff has the right of possession in the property allegedly converted. *See Seymour v. Adams*, 638 So. 2d 1044, 1046-47 (Fla. 5th DCA 1994). "[B]efore a party may be held guilty of . . .

18

conversion, it must be shown that there was exercised a positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the *true owner*." *Armored Car Serv., Inc. v. First Nat'l Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959) (emphasis added).  Similarly, a bailment "is generally a contractual relationship among parties in which the subject matter of the relationship is delivered temporarily to and accepted by one *other than the owner*." *S & W Air Vac Sys., Inc. v. Dept. of Revenue*, 697 So. 2d 1313, 1315 (Fla. 5th DCA 1997) (emphasis added).  "Bailment . . . requires *an owner of the object (the bailor)* and the possessor (the bailee)." *Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So.2d 1125, 1129 n.4 (Fla. 5th DCA 2002) (emphasis added).  If the plaintiff cannot show that he is the actual owner of the property at issue, then a claim for conversion or negligent bailment must fail.

The property alleged to have been either converted or lost is, in sum, "three years of original research" Plaintiff allegedly conducted in furtherance of his dissertation and an article for publication in a scientific journal, for which Dr. Potter was a co-author and "had participated sufficiently in the manuscript to take public responsibility for the whole content."  (Compl. ¶¶ 10, 28.)  Plaintiff also alleges that this research constituted a discovery, as he describes in his complaint that his research resulted in a "discovery for both screening and treatment of cardiomyopathy."  (Compl. ¶ 10(c).)  Plaintiff claims exclusive ownership over this discovery and research and Counts XI and XII depend on Plaintiff's ownership theory.  Indisputable evidence, however, undermines Plaintiff's claim of ownership.[5]

When Plaintiff enrolled as a M.D./Ph.D. student, he signed the University of Miami Patent & Copyright Policy Agreement, executed on September 17, 2007.  (Ex. C.)  Pursuant to

---

[5] Counts XI and XII are those as to which Defendants seek, in the alternative, summary judgment based on the submission of matters beyond the four corners of the complaint, pursuant to Rule 12(d), Federal Rules of Civil Procedure.

19

the Policy Agreement, Plaintiff agreed "to comply with the provisions of the Patent and Copyright Policy section of the University of Miami Faculty Manual, the Policies and Procedures Manual, the Graduate Studies Bulletin, and the Undergraduate Studies Bulletin." (*Id.*)  The Patent and Copyright Policy section of the University of Miami Faculty Manual states, in part:

> A *discovery* or invention, whether or not subject to patent, developed as a direct result of the regular duties of a faculty or staff member, or developed by a faculty member or staff member or student as a result of *research* done on or in connection with theses or dissertations or problems pertaining thereto, or as a result of a program of research financed wholly or in part by University funds, or funds under the control of the University, shall . . . be the exclusive property of the University.

(Ex. D at 119 (emphasis added).)

As the University is the owner of any discovery or invention that would be the fruit of Plaintiff's research, the University also is the rightful owner of the research that supports that discovery as the two are inextricably intertwined.  (*Id.*)  As such, pursuant to University policy that governs its relationship with Plaintiff, the University is the exclusive and proper owner of any discovery, and the research in support thereof, created by Plaintiff while he was Ph.D. student at the University.  As Plaintiff clearly claims his research constituted a discovery, the University is the owner of said discovery and research.  Since the University, and not Plaintiff, is the rightful owner of the property at issue, Plaintiff cannot sustain a claim for conversion or negligent bailment.  *See Seymour*, 638 So. 2d at 1046-47; *Meeks*, 816 So.2d at 1129 n.4. Therefore, Counts XI and XII fail to state causes of action for conversion or negligent bailment, respectively, and properly should be dismissed with prejudice or disposed of on summary judgment.

WHEREFORE, Defendants, University of Miami, James D. Potter, Ph.D., Jose Renato Pinto, Ph.D. and Claudia Rodrigues, Ph.D., respectfully request that the Complaint filed against

them by Plaintiff, Sanjeev Sirpal, be dismissed (or, in the case of Counts XI and XII be disposed

of on summary judgment) for the reasons set forth above, that these Defendants be awarded their

attorneys' fees to the extent permitted by law, as well as the costs of this action and any further

relief that the Court deems appropriate.

Respectfully submitted,

By:   s/*Susan V. Warner*

Eric D. Isicoff
Florida Bar No.: 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Susan Warner
Florida Bar No. 38205
Warner@irlaw.com
ISICOFF, RAGATZ & KOENIGSBERG
1200 Brickell Avenue
Suite 1900
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 5th day of October, 2009 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Susan V. Warner
Susan V. Warner

**SERVICE LIST**
**SANJEEV SIRPAL vs. UNIVERSITY OF MIAMI et al.**
**CASE NO: 1:09-CV-22662-CMA**
**United States District Court, Southern District of Florida**

Karen Coolman Amlong
William Robert Amlong
Rani Nair
Amlong & Amlong, PA
500 NE 4th Street
2nd Floor
Fort Lauderdale , FL 33301-1154
*Attorneys for Plaintiff, Sanjeev Sirpal*
Service via CM/ECF