UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.   09-CV-22662-Altonaga/Brown

SANJEEV SIRPAL,

        Plaintiffs,

vs.

UNIVERSITY OF MIAMI, a Florida
not for profit corporation, JAMES D.
POTTER, Ph.D.,  JOSE RENATO
PINTO, Ph.D., and CLAUDIA
RODRIGUES, Ph.D.,

        Defendants.

_____/

**Plaintiff's Response to Motion to Dismiss Counts I—III, VI—VII, X—XII
of Plaintiff's Amended Complaint, or, in the Alternative, Motion for
Summary Judgment as to Counts XI and XII, Pursuant to Rule 12(d),
Federal Rules of Civil Procedure as to Defendants, University of
<u>Miami, James D. Potter, Ph.D and Jose Renato Pinto, Ph.D.</u>**

Plaintiff, Sanjeev Sirpal, responds as follows to the Motion to Dismiss

Counts I—III, VI—VII, X—XII of Plaintiff's Amended Complaint, or, in the

Alternative, Motion for Summary Judgment as to Counts XI and XII, Pursuant

to Rule 12(d), Federal Rules of Civil Procedure as to Defendants, University of

Miami, James D. Potter, Ph.D and Jose Renato Pinto, Ph.D.:

**The Amlong Firm** ● 500 Northeast Fourth Street ● Fort Lauderdale, FL  33301 ● 954.462.1983

## Introduction

This is an action brought by Sanjeev Sirpal, a then-21-year-old, top-of-his-class student of Asian-Indian heritage whom colleagues were permitted to taunt openly in laboratory meetings by calling him "terrorist," "Towelhead" and "Habib"; whose break-through research was altered and misappropriated by the department chairman who was supposed to be mentoring him; and whom the University of Miami is seeking to not only throw out of its M.D./Ph.D. sequence, but to prevent him from re-enrolling elsewhere to obscure the research misconduct of the department chair.

Defendants seek to dismiss Sirpal's claims:

- for racial discrimination in a federally funded educational and research program (Count I) and in the making and enforcement of contracts (Count III) on grounds that there are no similarly situated comparators and that the ultimate decision-makers were someone other than those who demonstrated racial animosity against him;

- for breach of contract by the University of Miami (Count II) on grounds that Sirpal has failed to exhaust administrative remedies;

- for defamation (Count V, VII, and IX) on the grounds of an affirmative defense of privilege;

- for tortious interference with advantageous business relationships against Pinto (Count VI) on the grounds that Pinto, as a post-doctoral fellow, was a party to Sirpal's contract with the University of Miami and, therefore, could not tortiously interfere with it;

- for tortious interference with advantageous business relationships against Potter and the University (Count X) on the grounds that the perspective relationships with the various universities that were willing to admit Sirpal were not sufficiently ripe to be subject to tortious interference; and

- for conversion on the grounds that the University, not Sirpal, owned all of the research material that the University misplaced or destroyed.

The facts alleged in the complaint, overlaid on existing case law, do not support defendants' contentions.  The motion should be denied.

### Applicable Legal Rules Concerning Motions to Dismiss

As this court explicated recently in Transamerica Corp. v. Moniker Online Servs., Slip Op., Case No. 09-60973-Civ-Altonaga/Brown, 2009 U.S. Dist. LEXIS 114973 (S.D. Fla. Dec. 4, 2009):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 2009 WL 2431463, at *4 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950; see also Sinaltrainal, 578 F.3d 1252, 2009 WL 2431463, at *3 ("'[U]nwarranted deductions of  fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations."). A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." Brooks, 116 F.3d at 1368.

Id. at 10-12.

## Point 1:   Sirpal's counts for racial discrimination system state a claim upon which relief may be granted.

The familiar circumstantial-evidence paradigm of  McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973), Texas Dept. of Community Affairs v.

Burdine, 450 U.S. 248 (1981), and their progeny control the analysis of

intentional discrimination cases brought pursuant to 42 U.S.C. § 1981, see, e.g., Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989) ("the McDonnell Douglas/Burdine scheme of proof should apply in § 1981 cases such as this one")(superceded by statute on other grounds), and 42 U.S.C. § 2000d.  See, e.g., Camellia Therapeutic Foster Agency, LLC v. Riley, 290 Fed. Appx. 266, 268 (11th Cir. 2008)("For purposes of reviewing the district court's grant of summary judgment in favor of the department on Camellia's Title VI claim, we use the familiar [McDonnell Douglas] burden shifting framework").

"The burden of establishing a prima facie case of disparate treatment is not onerous."  Burdine, 450 U.S. at 253.  The "standard is not inflexible." Id. at n. 6.  Generally, "[a]djusting terms for the educational context, that means membership in a protected class, meeting the school's legitimate educational expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class."  Brewer v. Bd. of Trs., 479 F.3d 908, 921 (7th Cir. 2007).

Comparators, however, are not indispensable to a discrimination claim. "Although the absence of comparators may be relevant to whether the plaintiff has proven that [a particular adverse action] was the result of discrimination, it is not necessarily a claim-killing fact...."  Collado v. UPS, 419 F.3d 1143, 1154 (11th Cir. 2005).  "[E]ven in the absence of what may

fairly be described as a nearly identical comparator, some conduct may be so unfairly discriminatory that no reasonable person would find it non-actionable." McCann v. Tillman, 526 F.3d 1370, 1374 n. 4 (11th Cir. 2008). Thus, for example, "[d]ifficult as it might be to prove, a promotion could be denied for discriminatory reasons even though no one outside the protected class was promoted — even though there were no comparators and therefore no prima facie case." Collado, 419 F.3d at 1154. The McDonald Douglas court, after all, never mentioned the presence of comparators. Rather, is stated simply that

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802. The Burdine court, meanwhile, insisted only that the adverse action take place "under circumstances which give rise to an inference of unlawful discrimination." 250 U.S. at 253.

In the case at bar, Sirpal has alleged that:

• he is of Asian-Indian heritage (¶¶ 1, 4, and 49);

• he fully complied with the Universtity's academic and conduct regulations, as well as all of its investigative requests (¶ 62);

- he suffered adverse action, i.e., expulsion from Potter's laboratory and the Ph.D. program (¶¶ 4, 23, 25(d), 49, and 58) and an involuntary leave from the medical school (¶¶ 4, 41, 46(j), 49, and 58);

- those adverse actions were based on the untrue allegations that he had stolen protein samples (¶¶ 24(d), 33), made by someone who had angrily and jealously complained about "[y]ou Indians," ¶ 15, who routinely joined in taunting Sirpal (within Potter's hearing) as a "terrorist," "Towelhead" and "Habib" (¶¶ 1, 49, 15), and who was complicit in unfounded allegations that Sirpal had engaged in computer hacking and other misconduct (¶ 16);

- Potter not only accepted those allegations at face value, notwithstanding Sirpal's denial  (¶ 27), but also then passed the false allegations along to the Molecular and Cellular Pharmacology Graduate Program Committee (¶ 33 and 34) and the medical school (¶¶ 46(j), 46(k) and 49), each of which used those allegations as the basis for, respectively, Sirpal's expulsion from the medical school and involuntary leave from the School of Medicine (¶ 58);

- the actions against Sirpal were taken based solely on Potter's allegations, without any independent review by either the

graduate committee, the dean's office or the medical school —
without permitting Sirpal to defend himself against the
allegations as he is entitled to do under the University's written
policies (¶¶ 38-41).

This is not simply a disparate discipline case, in which the University
might be able to argue (as it seeks to do, Defendant's Memo, at 8-9) that
Sirpal, as a graduate student, is not similarly situated to Potter or Pinto, and
thus, they are not proper comparators.  See, e.g., Rioux v. City of Atlanta,
520 F.3d 1269, 1281 (11th Cir. Ga. 2008) (deputy fire chief could not
compare himself in disparate discipline case to battalion chief).

Rather, there are two inquiries, i.e., **First**, the University's treatment of
Sirpal as a student, and, **Second**, its treatment of him as a research
scientist.

Concerning the University's treatment of Sirpal as a student, this is a
case in which Sirpal has neither engaged in **any** misconduct whatsoever, nor
does the University have any claim to a genuine, good faith basis to believe
that he did.  Compare Elrod v. Sears, Roebuck & Co., 939 F.2d 1466 (11th
Cir. 1991)(good-faith belief necessary for employer to escape liability for
terminating employee based on accusations of sexual harassment).  Pinto
and Potter's stature as, respectively, a post-doctoral fellow and a department
chair aided them in accomplishing their racially motivated persecution of

Sirpal.  See, e.g., Faragher v. City of of Boca Raton, 524 U.S. 775, 802 (1998)(in implementing Title VII it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by abuse of his supervisory authority…").  The fact that neither Pinto nor even Potter was the titular final decision-maker, Defendants' Motion, at 5, is of little importance given the rubber-stamp dynamics of what happened: the graduate program committee, the university and the medical school each ratified Potter's face-value acceptance of Pinto's false allegations (see ¶¶ 46(b), (d), (e), (j), and (k)), making each level (the committee, the dean's office and the medical school) nothing more than a "cat's paw" for Pinto and Potter's racial discriminatioin.  See, e.g., Llampallas v. Mini-Circuits, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)(describing liability that occurs when "the harasser employed the decisionmaker as her 'cat's paw' — i.e., the decisionmaker acted in accordance with the harasser's decision without herself evaluating the employee's situation…").  Indeed, it is the University's absolute refusal to engage in any independent evaluation of the allegations against Sirpal as a student, within the framework of the due-process promised him by the University's and the medical school's handbooks, that underlie his claims for both discrimination and breach of contract.

Concerning the University's treatment of Sirpal as a research scientist, meanwhile, the Policies and Procedures of the University of Miami Relating to

Allegations of Misconduct in Research, Defendant's Motion, at Attachment B, DE 24-2, do not differentiate between students and faculty in their imposition of ethical standards.  Indeed, although the policy is addressed to "research misconduct arising from research conducted at the University," it specifically mentions only research "conducted by University faculty and employees."  Id. at 1.  Nonetheless, the University — which notwithstanding that the Research Investigation Committee was unable to determine "beyond a preponderance of the evidence" that anyone in particular had altered the image published in the Journal of Biological Chemistry, First Amended Complaint, DE 20, at 24, 27-28, ¶¶ 46(i)(i)-(ii) — has expelled Sirpal from the Ph.D. program and placed him on an involuntary leave from medical school. DE 20, at 29, ¶¶ 47. Meanwhile, however, it has taken no action against either:

- Potter, who lied either in his repeated certifications in connection with Sirpal's published manuscript that he had "**participated sufficiently** in the manuscript to take public responsibility for the whole content," DE 20, at 7, ¶ 10(e)(iv), or, conversely, when he told research-misconduct investigators that **he had never seen** the raw data for the manuscript, that **Sirpal had never shown him** the gel, and that Sirpal could not have done the experiments underlying his conclusions, id. at 16, ¶ 37(a), and 23, ¶ 45(a).

- Pinto, who admitted to the committee investigating the allegations of research misconduct that it was inappropriate for him to have sought credit as co-author of Sirpal's *JBC*, but stated that he was applying for a grant and thought that the publication credit would help him.  DE 20, at 8, ¶ 13, and 23-24, ¶ 45(d).

In summary, the University has:

**One**, based on the racially discriminatory allegations by Pinto and Potter, expelled Sirpal — an Asian-Indian whom Potter tolerated Pinto and others taunting with racial slurs — from its Ph.D. program and forced him onto an involuntary leave from medical school, denying him any of the procedural safeguards that it guarantees all of its graduate students and medical students; and

**Two**, subjected Sirpal to the expulsion and involuntary leave based in part of the research misconduct allegations, without proof of his having engaged in any misconduct, notwithstanding that it has imposed no discipline whatsoever on either of the two non-Indians, Potter and Pinto, in connection with their documented misconduct in connection with the *JBC* manuscript.

Plaintiff's First Amended Complaint clearly states a claim upon which relief may be granted for violation of his rights under both 42 U.S.C. §§ 1981 (Count III) and 2000d, et seq. (Count 1).

**Point 2:**   **Sirpal has not failed to exhaust administrative remedies: the University simply has denied him the ability to do so**

Not only has Sirpal not failed to exhaust administrative remedies, but the First Amended Complaint clearly alleges that the University has:

**One**, denied him access to either of the administrative remedies that it promised him through the policies that it promulgated; and

**Two**, to the extent that the research-misconduct investigation constitutes an administrative remedy (which it does not appear to), the University has obscured that remedy by conducting a sham investigation that failed to address Potter's alteration of the image that appeared in the *Journal of Biological Chemistry* or the destruction of Sirpal's research materials.

Sirpal alleges in ¶¶ 38-39 of his First Amended Complaint the Rights and Responsibilities promised him by the University's 2007-2008 handbook, DE 20, at 17-19.  Likewise, he alleges at ¶¶ 40-41 the guarantees made to him in the *University of Miami Miller School of Medicine 2007-2008 Student Rights and Responsibilities Handbook*.  Id. at 19-21.  He goes on to allege at ¶ 46, that notwithstanding (and without following) those promised procedures:

- Potter unilaterally dismissed Sirpal from his laboratory, DE 20, at 24, ¶ 46(a);

- The Graduate Committee dismissed him from the Ph.D. program, id. at ¶ 46(b);

- The dean and associate dean of the graduate school approved Sirpal's expulsion from the Ph.D. program without, in the dean's words, "consider[ing] the guilt or innocense related to the specific allegations," id. at 24-25, ¶¶ 46(d)-(e); and

- the medical school placed Sirpal on an indefinite, involuntary leave of absence, ignoring his request to appeal to its dean for reinstatement pending the outcome of the research misconduct investigation.  Id. at 28-29, ¶¶ 46(j) and (k).

As to the research misconduct investigation, Sirpal has alleged — with specificity, and not in a conclusory manner — how and why it was a sham proceeding, obviously designed to protect Potter from being branded the liar and research fraud that he is and to obscure responsibility for the destruction of Sirpal's data.  DE 20, at 23-28, ¶¶ 44, 45(a)-(d), 46(f)-(i)(iii)(2).

Further, logic overlaid on plain language dictates that because the research misconduct procedure provides no possibility of affirmative relief, it hardly can be considered a "remedy" that would be capable of exhaustion as a condition precedent to litigation.  Indeed, "remedy," by definition, is "[t]he means of enforcing a right or preventing or redressing a wrong legal or equitable relief."  Black's Law Dictionary 1296, (7th ed. 1999).  Rather, the "procedure's" never-ending, snail's-pace schedule, coupled with the medical school's refusal to entertain even interim relief for Sirpal pending the

resolution of the research-misconduct investigation, DE 20, at 28-29, ¶ 46(k), put whatever effective administrative remedy the Medical School's policies *might* afford beyond Sirpal's reach.  Contrary to the assertions of the University, the appeal has not simply "not concluded," Defendants' Motion, at 6, but never even got started.

The cases upon which the University relies concern "an available administrative remedy," see, e.g., Gamma Phi Chapter v. Univ. of Miami, 718 So. 2d 910, 911 (Fla. 3rd DCA 1998); Atlantic Gas Corp. v. Rec Centers, Inc., 305 So. 2d 791 (Fla. 4th DCA 1975)("available administrative remedies"), not an illusory one.

Finally, the argument that Sirpal has "intertwined and combined all three alleged actions by the University in one count to such an extent that it is impossible to parse out the individual allegations from the claim" makes no sense: Sirpal was enrolled in a Joint Ph.D./M.D. program and it was the University that chose to throw him out of the Ph.D. program without providing any of the due process that its graduate-student handbook guaranteed, and then to force him into an involuntary leave from medical school without any of the protections that the medical school handbook requires, and then to subject him an artificially elongated sham investigation.

Sirpal's First Amended Complaint clearly alleges arbitrary and capricious treatment of him by the University, which now attempts to argue

that he failed to exhaust administrative remedies to which it denied him any access.  Count II states a claim upon which relief may be granted for breach of contract.

**Point 3:**       **Any privilege that Potter or the University might have is qualified and subject to pleading and proof by the defendants**

Defendants Potter and the University attempt to rely on qualified privilege as a shield against Sirpal's defamation claims, arguing that "[i]f a speaker's statements are privileged, a plaintiff must plead express malice to proceed with his claim," Defendant's Motion, at 9, which Sirpal does in Count VII of his First Amended Complaint, DE 20, at 44, ¶ 92(c) ("The statements by Potter — and, through Potter, by UM — more particularly alleged in ¶¶ 33-34 were … stated maliciously and with the intent to injure Sirpal").

Additionally, Sirpal alleged in Count VIII of his First Amended Complaint,[1] DE 20 at 46, ¶¶ 99-100 that

> 99.    Potter's statements were not made in good faith or for a proper purpose: more specifically, Potter sought to eliminate Sirpal from the Ph.D./M.D. program so that he could scapegoat Sirpal for his own research misconduct in altering the image published in the *JBC* so that it would appear more consistent with Potter's own prior, federally-funded research.

> 100.  Potter acted with express malice, i.e., the primary motivation for his false statements to the Ph.D. program, the medical school and the research-misconduct investigators was to cover up his

---

[1]Although defendants did not move to dismiss Count VIII, Sirpal quotes these allegations as they are consistent with the other counts that defendants do seek to dismiss on grounds of privilege.

own research misconduct by being able to blame the alteration of the
*JBC* image on Sirpal[,]

and in Count IX, id. at 48, 107-108 that

> 107.  Potter's statements were not made in good faith or for a
> proper purpose: more specifically, Potter sought to prevent Sirpal from
> obtaining admission to the University of Florida's Ph.D./M.D. program
> to prevent Sirpal  from regaining credibility, thereby enhancing Potter's
> efforts to scapegoat Sirpal for Potter's own research misconduct in
> altering the image published in the *JBC* so that it would appear more
> consistent with Potter's own prior, federally-funded research.

> 108.  Potter acted with express malice, i.e., the primary
> motivation for his false statements to the University of Florida officials
> was to cover up his own research misconduct by being able to blame
> the alteration of the *JBC* image on Sirpal.

Such allegations are materially different than the one found to be wanting in

Jarzynka v. St. Thomas Univ. Sch. of Law, 310 F. Supp. 2d 1256, 1266 (S.D.

Fla. 2004), i.e., that the actor in that case spoke "negligently, carelessly and

recklessly."

Defendants' reliance on Valencia v. Citibank Intern., 728 So.2d 330

(Fla. 3rd DCA 1999) is misplaced.  That case merely rejected the forced self-

publication theory of defamation recognized by Lewis v. Equitable Life

Assurance Society of the U.S., 389 N.W.2d 876 (Minn. 1986).  In the case at

bar, Sirpal alleged at ¶ 113 that he had "fully disclosed all the facts

underlying his predicament," DE 20, at 49, but that Potter had falsely told

personnel at the University of Florida that Sirpal (not Potter) had altered the

image that appeared in the *JBC* article.  DE 20, at 32, ¶ 52 and 47, ¶ 104.

**<u>Point 4:</u>**     **Pinto was neither a party to Sirpal's relationship with the University nor acted in the University's interest when he falsely accused Sirpal**

While Pinto may have been a post-doctoral fellow, Defendants' Motion conclusorily asserts that this makes him a "party" to Sirpal's student-to-university relationship with the University.  Defendants' Motion, at 11-12. While that is not necessarily so, even if it were it would not prevent Sirpal from making a tortious interference claim against Pinto based on Pinto's racially motivated false accusations against Sirpal.  For, as held in <u>Salit v. Ruden</u>, 742 So. 2d 381, 386 (Fla. 4th DCA 1999),

> [T]he "privilege to interfere" enjoyed by an officer or employee of a contracting party is not absolute. The privilege is destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest.

<u>Id</u>. at 386.

In the case at bar, Sirpal has alleged that Pinto's accusations against Sirpal were "solely with ulterior purposes, i.e., to effectuate Pinto's racial bias and to get revenge against Sirpal for Sirpal's rejecting Pinto's request for undeserved credit on the *JBC* article" and "without an honest belief that his actions concerning Sirpal's status as a Ph.D./M.D. student was in UM's best interest."  DE 20, at 43, ¶¶ 87.

Thus, Count X states a claim against Pinto for tortious interference upon which relief may be granted.

**Point 5:**     **Sirpal's advantageous prospective relationships with other universities were specific actual, identifiable and likely**

While Sirpal had not enrolled in any other university, he has alleged in his first Amended Complaint prospective relationships that were "relationship[s] evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."  Ethan Allen v. Georgetown Manor, 647 So. 2d 812, 815 (Fla. 1994).

Contrary to defendants' assertion, Sirpal did not merely "state[] in his complaint that these universities informed him that he could apply to their institutions and that they would consider him for admission," Defendants' Motion, at 12, but rather specifically alleged offers of admission by the University of Florida and Tufts University, as well as offers of interviews by the University of Massachusetts, Wayne State University and Thomas Jefferson Medical School.  Because the University's refusal to release his transcripts or to provide a letter from its dean, First Amended Complaint, DE 20 at 20, ¶¶ 115-16, plus personal opposition by both Potter and the director of the University's M.D./Ph.D. program, those identifiable opportunities came to naught.

Sirpal has sufficiently alleged "actual and identifiable understanding[s]," particularly with Florida and Tufts, to state in Count X a

claim upon which relief may be granted for tortious interference by Potter and the University.

**Point 6:    Sirpal owned his notebook, jump drive and binders so he has claims for their conversion and negligent bailment**

Sirpal's conversion claim, Count XI, alleges at ¶ 122, DE 20, at 51, that the University converted to its own use the materials that he identifies at ¶ 29, i.e., notebooks, a computer jump drive, folders, a catalogue that he maintained of completed experiments, his dissertation proposals, his manuscripts, and his lab book, DE 20 at 13-14, which physical items Sirpal had purchased and clearly owned.  Id.  See also the Unsworn Declaration of Sanjeev Sirpal Pursuant to 28 U.S.C. § 1746 in Opposition to Defendants' Rule 12(d) Motion for Summary Judgment as to Counts XI and XII, which is appended as Attachment 1.

In Count XII, he alleges that Potter and the University were negligent in its bailment of his materials, i.e., the laboratory notebook, his binder and his electronic files, First Amended Compliant, DE 20, at 53, ¶ 133, that Potter instructed Sirpal to leave in Potter's laboratory, id. at 52-53, ¶¶ 128-129, and which, as a result of that negligence, have all been lost.  Id. at 53-54, ¶¶ 132-134.

While the ownership of intellectual property involved *may* in the future impact Sirpal's recovery of damages on those two counts, an issue that is not before the court at this juncture, Sirpal clearly states claims for which relief

may be granted for the conversion and negligent bailment of the physical items that he purchased and brought to the lab.  Nothing in the University of Miami Patent & Copyright Policy Agreement, Defendant's Motion, at Attachment C, gives the University the right to lose or destroy Sirpal's physical personal property even though it might contain his research notes.

### Conclusion

Based on the arguments presented and the authorities cited, plaintiff, respectfully requests this court to deny in all respects defendants' motion to dismiss, and to grant such other and further relief as is just.

Respectfully Submitted,

/s/ William R. Amlong
WILLIAM R. AMLONG
Florida Bar No:  470228
wramlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
kamlong@TheAmlongFirm.com
RANI NAIR BOLEN
Florida Bar No: 29293
rbolen@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, FL 33301-1154
Telephone:  (954)462-1983

***Attorneys for Plaintiff***

## Certificate of Service

**I HEREBY CERTIFY** that on December 21, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


/s/ William R. Amlong
WILLIAM R. AMLONG

**Service List**
Eric D. Isicoff, Esquire
Susan Warner, Attorney at Law
Teresa Ragatz, Attorney at Law
Isicoff Ragatz & Koenigsberg, P.A.
1200 Brickell Ave Ste 1900
Miami, Florida 33131-3257